# In the United States Court of Federal Claims

No. 22-434C

(E-Filed: August 31, 2023)

|  |  |
|---|---|
| KEYES HELIUM COMPANY, LLC, et al.,[1] | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Bret A. Sumner, Denver, CO, for plaintiffs. Malinda Morain, and Devon Bell, of counsel. Samuel J. Dolan, and Caroline E. Bossier, Houston, TX, of counsel.

Igor Helman, Senior Trial Attorney, with whom were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Amanda Wang, Department of Interior, Albuquerque, NM, of counsel.

## OPINION

CAMPBELL-SMITH, Judge.

On September 12, 2022, defendant filed a motion to dismiss plaintiff's complaint in this case pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). See ECF No. 10. Plaintiff filed its response to defendant's motion to dismiss on October 10, 2022, see ECF No. 11, and defendant filed its reply in support of

---

[1]   In this opinion, the court will refer to "plaintiff" in the singular rather than to "plaintiffs." Keyes Helium Company, LLC filed this case with certain underwriters and certain insurance companies subscribing to Policy No. B1740200667000 (collectively Keyes Helium), but the determinative here facts of the case pertain solely to Keyes Helium Company, LLC.

its motion on October 24, 2022, see ECF No. 12.  The motion is fully briefed and ripe for decision.

The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, defendant's motion to dismiss is **GRANTED**.

I.      Background[2]

      A.      Federal Helium Program

Helium is a critical and nonrenewable resource, essential to national endeavors including but not limited to military reconnaissance, space exploration, and medical imaging.  See ECF No. 1 at 4-5.  Today, the United States is the largest producer of helium.  See id. at 5.  Due to helium's unique properties, the federal government has taken an active role in the helium marketplace.  See id. at 4-8; ECF No. 10 at 7-9.  The Bureau of Land Management (BLM), a division of the United States Department of the Interior, "is charged with administering the federal helium program."  ECF No. 1 at 3.

The federal helium program began in 1910, see id. at 5, and has evolved over time from an effort to capture this valuable element into a comprehensive stewardship scheme, see id. at 4-8; ECF No. 10 at 7-9.[3]  This evolution now permits the BLM to contract with private entities.  See ECF No. 10 at 8-9.  "[The Helium Amendment Act of 1960] 'changed the [federal helium] program's mandate from exclusive government production of helium to conservation of the resource by executing contracts with private natural gas producers to purchase extracted crude helium for the [f]ederal government to store in the Bush Dome Reservoir.'"  Id.

To stabilize the cost and availability of helium, the United States Congress passed the Helium Stewardship Act (HSA) in 2013.  See id. at 9 (citing Helium Stewardship Act of 2013, Pub. L. No. 113-40, 127 Stat. 534 (codified in scattered sections of 50 U.S.C.)); see also ECF No. 1 at 8 (quoting Pub. L. No. 113-40).  The HSA "complete[d] the privatization of the [f]ederal helium reserve in a competitive market fashion [to] ensure stability in the helium markets while protecting the interests of American taxpayers."  ECF No. 10 at 9.  "Under the [HSA], 'the [BLM] provides helium storage, withdrawal, or transportation services to' private parties."  Id. (quoting 50 U.S.C. § 167c(a).  Furthermore, under the HSA, the BLM must "allow any person or qualified

---

[2]     The facts are primarily taken from plaintiff's complaint and are undisputed by defendant in its motion to dismiss.  The court makes no findings of fact here.

[3]     The federal helium program's evolution includes several amendments over the course of its long history.  The most relevant parts of the program are discussed in this opinion.

bidder to which crude helium is sold or auctioned under section 167d of this title to store helium in the Federal Helium Reserve," 50 U.S.C. § 167c(e)(1), and "offer crude helium for sale under such terms and conditions as the [BLM] deems necessary to minimize market disruption," ECF No. 1 at 8 (citing 50 U.S.C. § 167d(b)(1)).

      B.      The Helium Contract Between Plaintiff and Defendant

Plaintiff is a "privately owned Colorado limited liability company" and "an independent refiner of helium resources," located in Keyes, Oklahoma. Id. at 3. Defendant, through the BLM, "maintains a helium storage reservoir, enrichment plant, and pipeline system." Id. It is one of "a series of privately owned helium refineries that are located along the [federal helium] pipeline route [that] terminates in Bushton, Kansas." ECF No. 11 at 7.

On August 31, 2020, plaintiff and defendant entered into a bidirectional contract for helium storage and delivery. See ECF No. 1 at 8-10; ECF No. 10 at 10; ECF No. 1-1 (Contract for the Storage and Delivery of Helium Between the United States of America Department of the Interior Bureau of Land Management and Keyes Helium Company, LLC (contract); ECF No. 10-1 at 15-31 (same)). Defendant states the "[t]he [c]ontract contemplates that the delivery of helium is bidirectional: that is, [it] contains provisions for both the delivery of helium by [plaintiff] to the BLM and the delivery of helium by the BLM to [plaintiff]." ECF No. 10 at 10.

While the contract is bidirectional, and therefore contemplates both plaintiff and defendant's acceptance and delivery of helium shipments, the contract provides distinct provisions related to the rights and responsibilities of the parties. See ECF No. 1-1; ECF No. 10-1 at 15-31. Notably, under the provision titled "Acceptance and Delivery of Helium-Gas Mixtures," the subsection on acceptance applies only to deliveries received by defendant, not to deliveries received by plaintiff. See ECF No. 1-1 at 5-6; ECF No. 10-1 at 17-18.

The relevant portions of the contract are set forth below:

ARTICLE II

Acceptance and Delivery of Helium-Gas Mixtures

2.1    Acceptance and Storage by United States. The United States agrees to accept and to store Person's[4] helium-gas mixture that Person delivers into the Federal Helium Pipeline at Person's Metering Facility and/or Acceptance/Delivery Point, as

---

4    "Person" refers to plaintiff.

3

hereinafter provided at such flow rates and in such quantities that Person delivers, subject to the following conditions:

(a)  Person's helium-gas mixture contains:
  1) at least 65 percent helium by volume, except as allowed in paragraph 4.1.d
  2) no more than 20 parts per million of neon,
  3) no more than 200 parts per million of carbon dioxide,
  4) no more than 3 percent methane (CH4) by volume,
  5) no more than 96 parts per million of heavy hydrocarbons (C3+),
  6) no more than 2.3 percent hydrogen by volume, and
  7) no more than 7 pounds of water (H2O) per million cubic feet of gas.
  8) no more than 80 percent helium by volume.

. . .

(d)  The helium-gas mixture does not contain any component that the United States has determined is detrimental to the Federal Helium System.

. . .

2.2  Delivery by Person.

Person will provide estimates of delivery volumes Person plans to deliver to the Federal Helium Pipeline as follows:

(a)  Upon execution of this Contract, Person will provide the Authorized Officer an estimate of the volumes of helium-gas mixture that Person anticipates it will deliver or arrange to be delivered to the Federal Helium Pipeline during the Contract Year beginning on October 1, 2020.

. . .

(c)  If Person fails to provide the information required under paragraph (a) or paragraph (b) of this section at the time required, Person agrees to pay $2,000 in liquidated damages to compensate the United States for administrative costs.

2.3  Delivery by the United States.

Subject to the terms and conditions of this Contract, the limitations of the Federal Helium System to deliver, and the rights of the other storage contract holders within the Federal Helium System, the United States agrees to deliver to Person during the term of this Contract as much of the volume of helium owned by the Person and

stored by the United States in the Federal Helium System that Person requests, subject to any allocations in place.

  (a) <u>The helium will be delivered</u> to Person at Person's Acceptance/Delivery Point where the Federal Helium Pipeline is connected with a line that goes to Person's facilities, and <u>in a helium-gas mixture containing not less than 50 percent helium</u> by volume, and at the pressure existing in the system at the time and at the point of delivery, and will be delivered under conditions that permit suitable measurement and analysis specified by Article VI.

  (b) <u>Person agrees to compensate the United States</u>, pursuant to Article IV, for any <u>costs that the United States incurs to deliver a helium-gas mixture containing not less than 50 percent helium</u> by volume.

2.4 The parties agree that title to the other constituents of natural gas other than helium of any helium-gas mixture accepted from Person for storage will pass to the United States at the point of acceptance.  <u>The parties agree that upon delivery to Person of helium stored under this Contract, title to all constituents of the helium-gas mixture delivered to Person will pass to Person at the point of delivery</u>.

2.5 Person will provide estimates of volumes Person plans to request from the Federal Helium System as follows:

  (a) Person agrees that upon execution of this Contract, it will advise the Authorized Officer of the volumes of helium-gas mixture of which it expects to request delivery during the Contract Year beginning on October 1, 2020, so that the United States may estimate the total volume of helium which the United States may need to deliver from the Federal Helium System during each Contract Year.

. . .

  (c) If Person fails to provide the information required under paragraph (a) or paragraph (b) of this section at the time required, Person agrees to pay $2,000 in liquidated damages to compensate the United States for administrative costs.

ECF No. 1-1 at 5-7 (footnote and emphasis added).

  C. Methane-Related Issues at Plaintiff's Facilities in 2020-2021

On December 15, 2020, defendant delivered crude helium to plaintiff's refinery that contained "unacceptable and damaging levels of methane."  ECF No. 1 at 11.  Plaintiff alerted defendant of the "methane contamination" the day it was delivered.  <u>Id</u>.

Defendant reported to plaintiff, by email, that "'a slug of high methane gas in the BLM helium pipeline . . . was detected passing through Oklahoma on Tuesday 12/15/2020.'" Id. (citing December 15, 2020 email from BLM employee, Mark Musick).  On December 16, 2020,[5] the next day, plaintiff's refinery shut down "due to a failure of the purifier" which was caused by "the incredibly high concentrations of methane introduced into the pipeline by the BLM." Id. at 13.

After restarting operations on December 22, 2020, plaintiff had to shut down again due to methane-related issues. See id. All crude helium received from December 22 through 24, 2020, "was sent to waste tanks as unusable." Id. "[E]xtensive equipment repair and replacement by [plaintiff], including removing, repairing, and re-installing the refinery turbines and cleaning the entire refinery system using specialized high pressure chemical vapors and a high-volume nitrogen purge." Id. at 14.

Again in February of 2021, crude helium with "damaging levels of methane" was delivered by BLM." Id. Although plaintiff was able to divert this crude helium into waste storage to avoid further contamination of its plant, plaintiff asserts that this delivery caused more damage. See id. Plaintiff attempted to restart operations on April 22, 2021, but on May 4, 2021, "it was determined that the plant's helium turbines that were damaged by the BLM's methane contamination were still not functioning properly and had to be further examined and repaired." Id.

### D.   Plaintiff's Administrative Claims

On May 25, 2021, plaintiff filed an administrative claim with the United States Department of the Interior, BLM, Santa Fe, New Mexico requesting a state director review (SDR), and a "concurrent [c]laim for [its p]roperty [d]amages claim under the Federal Tort Claims Act (FTCA)." See id. The state director "only addresse[d] the SDR and . . . [t]he FTCA claim [was] decided separately." ECF No. 10-1 at 3 (December 6, 2021, SDR No. MN-2023 decision) and 40-41 (May 20, 2022, United States Department of the Interior, Office of Solicitor denial decision letter).

The state director issued a review decision on December 6, 2021, largely denying plaintiff's sought relief. See ECF No. 10-1 at 11-12; ECF No. 1 at 15. Notably, in the review decision, the state director found that the contract between the parties does not regulate methane levels in the crude helium delivered by defendant: "As long as the content of the helium mixture is 50 percent or greater, the BLM finds that any increase in methane is not a breach of [the contract]." ECF No. 10-1 at 8.

---

[5]   Plaintiff entered the year as "2021" in paragraphs 62 and 65 of the complaint. See ECF No. 1 at 13. These references appear to be typographical errors when considered in connection with the timeline set forth in the appended material and other filings.

On May 20, 2022, the United States Department of the Interior, Office of the Solicitor, Anchorage, Alaska issued its administrative decision denying plaintiff's property damage claim—which had been sustained nearly eighteen months earlier on December 15, 2020—under the FTCA, 28 U.S.C. §§ 2671-80. The May 20, 2022 denial decision issued almost one week after plaintiff filed its action in this court. See ECF No. 1 at 15 (stating that at the time, no decision regarding its tort claim had been rendered); ECF No. 10 at 8; ECF No. 10-1 at 40-41. That denial decision states, in pertinent part:

> You submitted a claim on behalf of [plaintiff] seeking $1,811,264.81 in compensation for property damages sustained on December 15, 2020, allegedly resulting from the alleged off-spec crude helium into [plaintiff's] refinery system in Oklahoma. This claim was referred to me for an administrative determination pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-80.
>
> This claim is denied . . . . After reviewing the factual information and the applicable law, we conclude that the United States, if a private person, would NOT be liable to [plaintiff] under the FTCA for the damage to its plant or its lost profits.

ECF No. 10-1 at 40-41.

E.    Plaintiff's Instant Complaint

On April 14, 2022, plaintiff filed a complaint in this court alleging: (1) a breach of contract; and (2) a violation of the takings clause of the Fifth Amendment to the United States Constitution. See ECF No. 1 at 16-20. Acknowledging that it had exhausted its administrative remedies, plaintiff alleged a third, alternative claim sounding in tort.[6] See ECF No. 1 at 18-19. Additionally, plaintiff did not enumerate a separate claim in its complaint for breach of the implied duty of good faith and fair dealing claim, and only summarily addressed this claim in its response to defendant's motion to dismiss, stating

---

[6]   In its complaint, plaintiff states:

**Alternative Claim against the United States of America.**

87.    In the alternative, and without waiver of the foregoing, in the event the Court finds that such claims, duties and liabilities did not arise out of the United States' performance of the BLM Delivery Contract, the United States is still liable for Plaintiffs' damages sounding in tort in the venue of the District Court of the Northern District of Texas. Plaintiffs incorporate by reference each of the allegations set forth above.

ECF No. 1 at 18.

7

that the "[c]omplaint, as pled, is sufficient to plead a breach of the duty of good faith and fair dealing implied in every contract."[7]  ECF No. 11 at 14 (citing Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).

For the sake of completeness, the court will address each of the identified claims: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; (3) tort; and (4) violation of the takings clause of the Fifth Amendment to the United States Constitution.

Asserting that plaintiff fails to state a claim upon which relief can be granted under RCFC 12(b)(6), defendant moves to dismiss the complaint.  See ECF No. 10.  On April 6, 2023, defendant filed a notice of a directly related case.  See ECF No. 13; ECF No. 13-1.  Plaintiff filed this directly related case in the United States District Court of the Northern District of Texas on November 18, 2022.[8]  See ECF No. 13 at 1; ECF No. 13-1 at 1.

II.     Legal Standards

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff."  Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In evaluating a motion to dismiss for

---

[7]     Here, plaintiff acknowledges that it offered only spare treatment of this claim in its complaint.  This claim cannot stand legally.  Thus, to the extent plaintiff seeks to amend the complaint, its request is denied.

[8]     Defendant states, in its notice of directly related case, as follows:

> The case to which this case is directly related is Keyes Helium Co., LLC, et al. v. United States, filed in the Northern District of Texas on November 18, 2022, and docketed under No. 2:22-cv-224-Z-BR (the Texas Case).  The parties to the Texas Case are the same as the parties to this case (the COFC Case).  RCFC 40.2(a)(2)(A).  The claims presented in the Texas Case are similar in several respects to the claims in the COFC case, id., and involve the same contract and property, id. 40.2(a)(2)(B).

ECF No. 13 at 1.

failure to state a claim, the court "primarily consider[s] the allegations in the complaint," but is "not limited to the four corners of the complaint," and may also look to the "matters incorporated by reference or integral to the claim." Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (citations omitted).

III.   Analysis

Defendant seeks to dismiss plaintiff's complaint for failure to state a claim under RCFC 12(b)(6) because, it asserts, the breach of contract claim cannot stand under a plain reading of the contract itself. See ECF No. 10 at 17. And for the same reason that plaintiff's breach of contract claim must fail, so must its claim for breach of the implied duty of good faith and fair dealing. As to plaintiff's tort claim, defendant argues that it too must fail because that claim is predicated on the breach claim. See id. at 17-18. Finally, defendant avers that plaintiff cannot prevail on its Fifth Amendment takings claim because plaintiff's property right stems from its contract. See id. at 18. For the following reasons, the court agrees.

    A.   Plaintiff's Breach of Contract Claim Cannot Stand

"To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989) (citations omitted). Determining the obligation or duty that arises out of a contract "is a legal question of contract interpretation." Id. "'Contract interpretation begins with the language of the written agreement.'" Bell/Heery v. United States, 739 F.3d 1324, 1331 (Fed. Cir. 2014) (quoting Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003). It is "well established . . . that the provisions of a contract must be read as a whole." Merando, Inc. v. United States, 475 F.2d 603, 605 (Ct. Cl. 1973) (citations omitted); see also Lockheed Martin IR Imaging Sys., Inc. v. West, 108 F.3d 319, 322 (Fed. Cir. 1997) (stating that "the various contract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms") (citations omitted). If the contract language is unambiguous, it "'must be given [its] plain and ordinary meaning.'" McAbee Const., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quoting Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993)).

The existence and validity of the helium contract between the parties is established and uncontested. See ECF No. 1 at 8-9; ECF No. 1-1; ECF No. 10 at 2; ECF No. 10-1 at 15-31. Thus, the question before the court is whether plaintiff has set forth a plausible claim for relief with respect to an obligation or duty under the contract and the alleged subsequent breach of that contract.

In its complaint, plaintiff asserts that defendant breached the contract when BLM delivered crude helium with high methane concentrations in December 2020, and again in February 2021.  See ECF No. 1 at 16-17.  In support of its claim, plaintiff points to the contract provision stating that helium delivered by defendant to plaintiff's refinery will be "in a helium-gas mixture containing not less than 50 percent helium by volume."  Id. at 16.  As plaintiff elaborates in the complaint: "[Defendant] breached its agreement with [plaintiff] by…[f]ailing to deliver the helium-gas mixture in accordance with the terms and conditions of the [contract]."[9]  Id. at 17.

In its motion, defendant states that plaintiff has "failed to identify any contractual obligation requiring any particular level of methane in the helium-gas mixture delivered by the BLM."  Id. at 17-18.  Placing emphasis on the contract language, defendant observes that "[t]he parties to the [c]ontract knew how to specify methane limits yet they chose not to specify any methane limits for the helium that the BLM provides to [plaintiff]."  Id. at 16.  Underscoring the one-sided limitation on methane content in the delivered helium, defendant adds that "deliveries with less than 50 percent helium are expressly contemplated by the [c]ontract because if the helium in the mixture is less than 50 percent by volume, [plaintiff] is not obligated to pay for it."  Id. at 18 (emphasis in original); see ECF No. 10-1 at 19.

Plaintiff relies heavily on the contract language which governs helium delivery by the United States, specifically prescribing the delivery of "a helium-gas mixture containing not less than 50 percent helium by volume."  ECF No. 11 at 11-12; ECF No. 1-1 at 5 (Art. II, § 2.3(a)).  Plaintiff also relies on its own contractual duty to deliver "a helium-gas mixture no more than 3 percent methane (CHR) by volume," among other chemical requirements.  ECF No. 11 at 12; ECF No. 1-1 at 5 (Art. II, § 2.1(a)(4)).  Plaintiff asserts that the terms limiting methane delivered to defendant are "express terms [which] require the BLM to maintain, supervise, and operate the crude helium pipeline in accordance with the terms of the contract and industry standards."  ECF No. 11 at 12.  Plaintiff contends that "[i]t is the deviation of composition from the minimum contractual terms which forms the breach of the [contract]— and those acts and/or omissions in the attempted performance."  Id.  But, plaintiff does not explain how the contract provisions requiring defendant's delivery of a gas mixture of at least 50 percent inform the contract breach claim based on the delivery of a high methane content product.

---

[9]   In its complaint, plaintiff elaborates upon its breach of contract allegations by putting forth a list of seven differently crafted allegations in support of its breach claim.  See ECF No. 1 at 17.  Only the first allegation in plaintiff's list, however, supports the breach claim, specifically the alleged failure to deliver claim.  See id.  The balance of plaintiff's list includes allegations related to "industry standard," "reasonable care," "fail[ure] to warn," and "unreasonabl[e] delay[ in] warning," id., assertions that implicate a tort claim.  See id.  The court, therefore, limits its discussion in this section of the opinion to the first allegation.

Defendant is required under the contract to deliver "a helium-gas mixture containing not less than 50 percent helium by volume." ECF No. 1-1 at 6 (Art. II, § 2.3(a)).  The contract anticipates that a delivery may contain less than 50 percent helium, and allows that in such an instance, defendant is not obligated to pay for the nonconforming delivery.  See id. (Article II, § 2.3(b)).  Additionally, the contract states that "[t]he parties agree that upon delivery to [plaintiff] of helium stored under this [c]ontract, title to all constituents of the helium-gas mixture delivered to [plaintiff] will pass to [plaintiff] at the point of delivery."  Id. at 7 (Art. II, § 2.4).

Asserting that neither "[s]ection [2.3 or 2.4][10] of the [c]ontract unambiguously express[es] the parties' intent that [plaintiff] waive any claim for nominal, expectancy, or restitution damages for breach of the [s]ection 2.3 requirement to deliver at least 50% helium by volume," plaintiff turns to the Restatement of Contracts.  ECF No. 11 at 13. Plaintiff asserts that "[g]enerally, a non-breaching party is entitled to judicial remedies, including . . . expectation interest[,] . . . reliance interest[,] . . . or restitution interest. . . ." ECF No. 11 at 13 (citing RESTATEMENT (SECOND) OF CONTRACTS, § 344).  Plaintiff's reliance on this treatise, however, is misplaced because plaintiff has failed to establish a breach under the contract terms.

Breach of contract requires an obligation, breach of that obligation, and damages that stem from the breach.  See San Carlos Irrigation & Drainage Dist., 877 F.2d at 959. Here, the harm detailed at length by plaintiff centers on measured methane levels in defendant's deliveries to plaintiff.  But neither the contract nor plaintiff indicates how the detection of elevated methane levels is related to any contractual obligation imposed on defendant concerning a product containing less than 50 percent helium.  That is, by simply pointing to the coincident presentation of less than 50 percent helium and excessive methane levels, plaintiff does not show how produced methane levels trigger any duty owed by defendant under the contract.  See ECF No. 1 at 15 ("The BLM admitted that it had delivered off-spec helium when it delivered helium-gas mixture on December 15, 2020, and February 27, 2021, containing not less than 50 percent helium by volume. . . .  In total, BLM agreed to credit approximately 0.0002% of the helium lost to [plaintiff] as a result of BLM's off-spec delivery.").  Absent a contractually explicit basis for its claim, plaintiff's breach of contract claim cannot stand.

---

[10]   Plaintiff cited to contract "section 2.5" in its response.  See ECF No. 11 at 13.  As section 2.5 is unrelated to the matters at hand (only specifying how and when plaintiff must offer notification to defendant regarding the volume of helium that plaintiff intends to request from the federal helium system), this reference appears be an inadvertent error.  The court does not perpetuate this error, but instead examines the contract provisions that pertain to the raised issue.

B.  Plaintiff's Breach of Implied Duty of Good Faith and Fair Dealing Must Fail

Plaintiff did not enumerate a separate claim for breach of the implied duty of good faith and fair dealing in its complaint. Rather, plaintiff asserts, in its response to defendant's motion to dismiss, that "[d]efendant's actions in delivering damaging levels of contaminants with the crude helium completely destroyed [plaintiff's] ability to achieve the benefit of the bargain with the United States." Id.

Implied in every contract is a duty of good faith and fair dealing. See Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 828 (Fed. Cir. 2010) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981)). "The covenant of good faith and fair dealing . . . imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The implied duty of good faith and fair dealing, however, "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." Precision Pine & Timber, Inc., 596 F.3d at 831 (citing Centex, 395 F.3d at 1304-06).

Here, plaintiff's claim for breach of the implied duty of good faith and fair dealing must fail for the same reason that its breach of contract claim does. The contract imposes no duty on defendant to monitor the methane levels in its deliveries and thus, defendant bears no contractual responsibility for any asserted damage resulting from such conditions. Because the implied duty of good faith and fair dealing alleged by plaintiff would impermissibly "expand [defendant's] contractual duties beyond those in the express contract," id. at 831, plaintiff cannot prevail on this claim.

C.  Plaintiff's Claim Sounding in Tort Cannot Stand

Having already pursued a Federal Tort Claims Act claim, see ECF No. 1 at 2, plaintiff now asserts a negligence claim against defendant that "will require this [c]ourt to [decide] whether the tort claims are 'tag along' with the [contract claim]," ECF No. 11 at 18.

The court does not have independent jurisdiction over tort claims. See 28 U.S.C. § 1491(a)(1). And contrary to the contention of plaintiff, it is not assisted by the finding of the United States Court of Appeals for the Federal Circuit in Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002), that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims." As already addressed,

plaintiff's breach of contract claim cannot stand. Accordingly, under Awad, neither can plaintiff's allegedly related tort claim.

        D.        Plaintiff Fails to State a Claim for a Taking under the Fifth Amendment

Plaintiff asserts both physical and regulatory takings claims in its complaint. See ECF No. 1 at 19-20.

As a jurisdictional matter, "[p]laintiffs are permitted to plead, in the alternative, a breach of contract and a Fifth Amendment taking." Sonoma Apartment Assocs. v. United States, 124 Fed. Cl. 595, 598 (2015) (citing Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1368-69 (Fed. Cir. 2009)). But, "[t]aking claims rarely arise under government contracts because the government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001); accord St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008) ("In general, takings claims do not arise under a government contract because . . . the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract.").

The determination of whether "a plaintiff can achieve success on a concurrently alleged taking claim requires examination of whether the property rights alleged to have been taken were solely created by the terms of the contract." Clear Creek Cmty. Servs. Dist. v. United States, 132 Fed. Cl. 223, 262 (2017) (citation omitted). A takings claim risks dismissal if the rights alleged to have been taken do not exist independently of the breached contract. See Tamerlane, Ltd. v. United States, 80 Fed. Cl. 724, 738, aff'd, 550 F.3d 1135 (Fed. Cir. 2008) (dismissing a takings claim where "plaintiffs ha[d] not alleged facts to suggest that the property rights underlying their claims exist independently of their contracts with the [g]overnment"); see also Clear Creek Cmty. Servs. Dist., 132 Fed. Cl. at 263.

Plaintiff's takings allegations, in pertinent part, are as follows:

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT, TAKING OF**
**PRIVATE PROPERTY WITHOUT JUST COMPENSATION**

    . . .

> 93. To date, the United States has paid nothing to [plaintiff] for its valuable helium lost as a result of the acts and omissions of the United States acting through BLM.
>
> . . .
>
> 95. The actions of the federal employees and officials referenced above are contrary to the Fifth Amendment to the United States Constitution and are actionable in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491.
>
> 96. The United States' actions constitute a physical taking of [p]laintiff's property and a regulatory taking depriving [p]laintiff of the economic value of its BLM Delivery Contract for which just compensation is due within the meaning of the Fifth Amendment to the United States Constitution.

ECF No. 1 at 19-20.

Plaintiff claims that its lost helium is the property interest at issue. See id. at 19. But, plaintiff does not claim that this property right exists beyond the contract itself. See id.; see Tamerlane Ltd. v. United States, 80 Fed. Cl. 724, 738 (2008). In fact, plaintiff appears to concede the contract-centered basis for this property right in its allegations, stating that "[defendant's] actions impaired [p]laintiff's property rights and interests pursuant to the BLM Delivery Contract, without due process." ECF No. 1 at 20 (emphasis added).

A plausible claim for a takings action must allege "any facts that, if proven, would entitle them to the relief sought." Tamerlane, Ltd., 80 Fed. Cl. at 732 (citing Bell Atl. Corp., 550 U.S. at 561-62; McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1361-62 (Fed. Cir. 2007)). "Although plaintiff['s] factual allegations need not be 'detailed,' they 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Id. at 732 (citing Bell Atl. Corp., 555 U.S. at 553-54 (internal citation omitted)).

Here, plaintiff's takings claim does not identify an extra-contractual source of its property interest. Instead, "any claim plaintiff may have to [helium] necessarily implicates the federal contract through which plaintiff receives that [helium], [and thus] plaintiff must seek relief through a breach-of-contract action." Clear Creek Cmty. Servs. Dist., 132 Fed. Cl. at 263; Consumers Energy Co. v. United States, 84 Fed. Cl. 152, 157 (2008) (concluding that a takings claim "must be dismissed because the claim is wholly dependent on the Standard Contract and as a matter of law is properly enforced through contract remedies"). Plaintiff's takings claim must be dismissed.

IV.     Conclusion

Accordingly, for the foregoing reasons:

(1)     Defendant's motion to dismiss, ECF No. 10, is **GRANTED**; and

(2)     The clerk's office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's complaint in its entirety, **with prejudice**.

IT IS SO ORDERED.

                                      s/Patricia E. Campbell-Smith
                                      PATRICIA E. CAMPBELL-SMITH
                                      Judge